# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

JUSTIN CLARK,

        Plaintiff,

    v.

BRIAN OWENS, Commissioner, Individually
and in his Official Capacity; STANLEY
WILLIAMS, Warden, Smith State Prison,
Individually and in his Official Capacity; C/O
DEAL, Smith State Prison, Individually and in
his Official Capacity; C/O ERIC SMOKES,
Smith State Prison, Individually and in his
Official Capacity; LT. COLEMAN,
Individually and in his Official Capacity;
DENNIS BROWN, Warden, Hancock State
Prison, Individually and in his Official
Capacity; ERIC SELLARS, Hancock State
Prison, Individually and in his Official
Capacity; C/O GEORGE IVEY, Hancock State
Prison, Individually and in his Official
Capacity; C/O JARVIS PRIMUS, Hancock
State Prison, Individually and in his Official
Capacity; C/O MICHAEL RANSOM,
Hancock State Prison, Individually and in his
Official Capacity; DR. LIFT, Medical
Director, Hancock State Prison, Individually
and in his Official Capacity; C/O KENNETH
BURNETTE, Hancock State Prison,
Individually and in his Official Capacity;
GREGORY MCLAUGHLIN, Warden, Macon
State Prison, Individually and in his Official
Capacity; DON BLAKELY, Deputy Warden,
Macon State Prison, Individually and in his
Official Capacity; and C/O TRACY
MCINTYRE, Macon State Prison, Individually
and in his Official Capacity,

        Defendants.

CIVIL ACTION NO.: CV614-122

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Macon State Prison in Oglethorpe, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while housed at Macon State Prison and, previously, at Smith State Prison in Glenville, Georgia, and Hancock State Prison in Sparta, Georgia. (Doc. 1.) The undersigned has conducted an initial review of Plaintiff's Complaint as required by 28 U.S.C. § 1915A.

Pursuant to that review, and for the reasons set forth below, the undersigned **RECOMMENDS** that Plaintiff's Section 1983 and state-law claims against Williams, Deal, Smokes, Coleman, and Commissioner Owens arising out of the alleged events at Smith State Prison be **SEVERED** into a separate lawsuit from his claims against Defendants Brown, Sellers, Ivey, Primus, Ransom, Lift, Burnette, McLaughlin, Blakely, McIntyre, and Commissioner Owens relating to Hancock State Prison and Macon State Prison. The undersigned further recommends that Plaintiff's claims against Williams, Deal, Smokes, Coleman, and Commissioner Owens concerning Smith State Prison be **DISMISSED**. In addition, Plaintiff's suit against Brown, Sellers, Ivey, Primus, Ransom, Lift, Burnette, McLaughlin, Blakely, McIntyre, and Commissioner Owens should be **TRANSFERRED** to the United States District Court for the Middle District of Georgia. Consistent with those recommendations, Plaintiff's Motions for a Temporary Restraining Order and Motions for Preliminary Injunction are **DENIED** as moot. (Docs. 3–4, 9–10.)

The Court provides additional instructions to Plaintiff pertaining to his right to file objections to this Report and Recommendation, which he is urged to read.

## STANDARD OF REVIEW

In any civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, Section 1915A requires a district court to screen the

prisoner's complaint for cognizable claims before, or as soon as possible after, docketing. 28 U.S.C § 1915A(a). The court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune. Id. § 1915A(b). Similarly, Section 1915, which governs a prisoner's payment of filing fees, states that a court must dismiss an action that "fails to state a claim on which relief may be granted." Id. § 1915(e)(2)(B)(ii).

In conducting this review, the Court must ensure that the prisoner plaintiff has complied with the mandates of the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, 1915A. However, in determining compliance, the undersigned is guided by the longstanding principle that pro se pleadings are entitled to liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972); Walker v. Dugger, 860 F.2d 1010, 1011 (11th Cir. 1988).

In addition, the Court is guided by the opinion of the Eleventh Circuit Court of Appeals in Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). In Mitchell, the Eleventh Circuit interpreted the language in Section 1915(e)(2)(B)(ii). Mitchell, 112 F.3d at 1490. Noting that this language closely tracks the language of Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the court held that the same standards for deciding whether to dismiss for failure to state a claim under Rule 12(b)(6) should be applied to the initial review of prisoner complaints under Section 1915(e)(2)(B)(ii). Id. While the court in Mitchell interpreted Section 1915, its interpretation guides this Court in applying the nearly identical language of the screening provisions in Section 1915A. See Jones v. Bock, 549 U.S. 199, 215 (2007) (dismissal pursuant to Section 1915A(b)(1) for failure to state a claim governed by same standard as dismissal for failure to state a claim under Rule 12(b)(6)).

To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Because "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys," they are liberally construed. Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).

PLAINTIFF'S ALLEGATIONS

Plaintiff asserts a broad spectrum of contentions in his Complaint against numerous Defendants.  His allegations pertain to his imprisonment at Smith State Prison, Hancock State Prison, and Macon State Prison.  (Doc. 1, pp. 4–14.)

Plaintiff contends that while he was housed at Smith State Prison on September 26, 2013, he received a disciplinary report for allegedly possessing drugs in his cell and, subsequently, was moved to housing in administrative segregation.  (Id. at pp. 4–5.)  Plaintiff asserts that his placement in administrative segregation violated prison policy regarding the qualifications for administrative segregation and the requirement of a disciplinary hearing within ninety-six hours after placement therein.  (Id. at pp. 5–6.)  According to Plaintiff, his disciplinary hearing did not occur until October 10, 2013, at which time Lieutenant Coleman ("Coleman") found Plaintiff guilty of the charge of possession of drugs, based solely on the allegations in the disciplinary report and without producing any drug-testing results.  (Id. at p. 6.)  Plaintiff avers that he filed administrative appeals with Warden Stanley Williams ("Williams") but that Williams never responded within the allotted time period.  (Id. at pp. 6–7.)  Plaintiff further represents that Correctional Officer Deal ("Deal") is responsible for approving all housing assignments on

4

behalf of Williams and that Correctional Officer Eric Smokes ("Smokes") supervises administrative segregation at this facility.  (Id. at p. 2.)

Plaintiff states that on November 14, 2013, he was transferred to Hancock State Prison, where he was assigned immediately to the administrative segregation program supervised by Correctional Officer Michael Ransom ("Ransom").  (Id. at p. 8.)  Plaintiff submits that his housing assignment at this facility violated prison policy, because it was determined based on his previous placement at Smith State Prison rather than on a disciplinary hearing upon transfer. (Id.)  Plaintiff maintains that he appealed his assignment to Warden Dennis Brown ("Brown") and never received a response.  (Id.)  Additionally, Plaintiff contends that on July 25, 2014, Correctional Officers George Ivey ("Ivey") and Jarvis Primus ("Primus") confiscated Plaintiff's property, including his asthma pump, and Correctional Officer Kenneth Burnette ("Burnette") informed Plaintiff that his belongings would not be returned until the following week.  (Id. at p. 9.)  According to Plaintiff, he filed a grievance against Ivey and Primus, and, in retaliation, Dr. Lift ("Lift"), the Medical Director of the facility, discontinued his respiratory treatment.  (Id. at p. 11.)  Plaintiff also avers that Ivey, Primus, and Burnette fabricated disciplinary reports against him and that Warden Eric Sellers ("Sellers") threatened him on one occasion.  (Id. at pp. 10, 12-13.)

Plaintiff further alleges that he was transferred to Macon State Prison on September 26, 2014, where he again was placed in administrative segregation immediately and without a hearing.  (Id. at p. 13.)  Plaintiff submits that he also was not given a form to appeal his assignment to administrative segregation, as required by prison policy. (Id.)  Plaintiff maintains that Warden Gregory McLaughlin ("McLaughlin") is responsible for the operation of Macon State Prison, Deputy Warden Don Blakely ("Blakely") approves all housing assignments on

behalf of McLaughlin, and Correctional Officer Tracy McIntyre ("McIntyre") oversees the administrative segregation program at this facility.  (Id. at p. 4.)

On November 21, 2014, Plaintiff filed the instant Complaint arguing that the alleged events at Smith State Prison, Hancock State Prison, and Macon State Prison violated his constitutional and state-law rights.  (Id. at pp. 1, 15–16.)  As Defendants, Plaintiff names the officials from these facilities, as well as Brian Owens, the Commissioner of the Georgia Department of Corrections ("Commissioner Owens"), individually and in their official capacities.  (Id. at pp. 2–4.)  Specifically, Plaintiff claims that Smith State Prison officials Williams, Deal, Smokes, and Coleman; Hancock State Prison officials Brown, Ivey, Ransom, and Sellers; and Macon State Prison officials McLaughlin, Blakely, and McIntyre violated his Fourteenth Amendment rights to due process and equal protection by failing to follow prison policy in assigning him to administrative segregation at their respective facilities.  (Id. at p. 15.)  In addition, Plaintiff claims that the actions of Hancock State Prison officials Sellers, Ivey, Primus, Burnette, and Lift with regard to his respiratory treatment constituted deliberate indifference to his medical needs, in violation of the Eighth Amendment, and negligence under Georgia law.   (Id. at pp. 15–16.)   Plaintiff also sets forth conspiracy claims against Commissioner Owens; Smith State Prison officials Williams and Deal; and Hancock State Prison officials Brown, Ivey, and Sellers, on the basis that their failure to investigate his administrative appeals demonstrated a conspiracy to violate his rights.  (Id. at p. 16.)  Furthermore, it appears that Plaintiff seeks to assert a claim of intentional infliction of emotional distress under Georgia tort law against all of the named Defendants.  (See id. at p. 1 ("Plaintiff also alleges the tort[ ] of [i]ntentional [i]nfliction of mental or emotional distress.");  id. at pp. 17–18 (seeking

compensatory damages for "emotional injury" resulting from his placement in administrative segregation as well as the discontinuation of his respiratory treatment)).

As relief, Plaintiff requests a declaration that the officials violated his constitutional and state-law rights, in addition to compensatory and punitive damages.  (<u>Id.</u> at pp. 16–18.)  Plaintiff also asks that the Court expunge his disciplinary reports at these facilities and issue preliminary injunctions ordering Owens and McLaughlin to release him from administrative segregation and arrange for him to undergo a medical examination.  (<u>Id.</u> at pp. 16–17.)

DISCUSSION

Plaintiff's allegations implicate numerous theories of liability, and the undersigned addresses each of these in turn.  This analysis applies the Standard of Review set forth above and accepts Plaintiff's nonconclusory factual allegations as true, as the Court must do at this stage.

**I.    <u>Improper Joinder</u>**

As an initial matter, Plaintiff cannot proceed against the several Defendants jointly in this action.  Pursuant to Federal Rule of Civil Procedure 20(a)(2) ("Rule 20(a)(2)"), a plaintiff may not join various defendants in one action unless two prongs are satisfied: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  In determining whether to allow joinder, a district court "is guided by the underlying purpose of joinder, which is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits."  <u>Swan v. Ray</u>, 293 F.3d 1252, 1253 (11th Cir. 2002) (internal quotation marks omitted) (quoting <u>Alexander v. Fulton Cnty., Ga.</u>, 207 F.3d 1303, 1323 (11th Cir. 2000), <u>overruled on other grounds by</u> <u>Manders v. Lee</u>, 338 F.3d 1304 (11th Cir. 2003)).

7

Under the first prong, the term "transaction" is flexible and comprises "all logically related events entitling a person to institute a legal action against another." Alexander, 207 F.3d at 1323 (internal quotation marks omitted) (stating that allegations of a "pattern or practice" of discrimination would describe such logically related events so as to meet the transaction requirement). The second prong "does not require that all questions of law and fact raised by the dispute be common, but only that some question of law or fact be common to all parties." Id. at 1324.

Even accepting Plaintiff's factual allegations as true, Plaintiff fails to show that the first prong of Rule 20(a)(2) is satisfied. Plaintiff asserts no single right to relief against all Defendants jointly, severally, or in the alternative. Plaintiff cites Section 1983 and his rights to due process and equal protection as grounds for relief against ten of the fifteen Defendants, jointly and severally: Smith State Prison officials Williams, Deal, Smokes, and Coleman; Hancock State Prison officials Brown, Sellers, Ivey, and Ransom; and Macon State Prison officials McLaughlin, Blakely, and McIntyre. (Doc. 1, p. 17.)[1] However, Plaintiff's asserted rights to relief arise out of several isolated instances, in which Plaintiff believes different officials at separate facilities failed to follow prison policy concerning placement in administrative segregation. (See id. at pp. 6, 8, 13, 15, 17.) Indeed, Plaintiff's allegations against Williams, Deal, Smokes, and Coleman concern his initial placement in administrative segregation at Smith State Prison on September 26, 2013; his claims against Brown, Sellers, Ivey, and Ransom relate to his placement in administrative segregation upon transfer to Hancock State Prison on November 14, 2013; and his claims against McLaughlin, Blakely, and McIntyre

---

[1] As discussed supra, it seems that Plaintiff also may intend to state claims of intentional infliction of emotional distress under Georgia tort law. To the extent that Plaintiff seeks to assert such claims against these ten Defendants, those claims likewise fail under the first prong of Rule 20(a)(2), for the reasons discussed here.

arise out of his placement in administrative segregation upon transfer to Macon State Prison on September 26, 2014.  (Id. at pp. 4–5, 8, 13, 17.)  While Plaintiff maintains that he was denied a disciplinary hearing on each of these occasions, Plaintiff offers no facts demonstrating that this alleged deprivation at the initial placement stage bore any logical relation to those allegedly occurring upon transfer to the other facilities.  Consequently, Plaintiff fails to establish any plausible basis for holding Smith State Prison officials Williams, Deal, Smokes, and Coleman jointly and severally liable for the independent decisions of the officials at Hancock State Prison and Macon State Prison.[2]

Plaintiff's contention that Smith State Prison officials Williams and Deal conspired with the officials from the other facilities does not change this result.  (Id. at pp. 14, 16.)  Without any facts suggesting that Williams and Deal reached some agreement with the other officials to violate Plaintiff's rights, such a conclusory allegation of conspiracy fails to plausibly establish any logical connection between the actions of these officials, as required under Rule 20(a)(2). See Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002) ("To establish a prima facie case of section 1983 conspiracy, a plaintiff must show, among other things, that the defendants reached an understanding to violate his rights." (alteration omitted) (internal quotation marks omitted) (quoting Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988), overruled in part on other grounds by Whiting v. Traylor, 85 F.3d 581, 584 n.4 (11th Cir. 1996))).  Plaintiff also represents that the Hancock State Prison officials assigned Plaintiff to administrative segregation upon transfer based on his previous placement at Smith State Prison;

---

[2]   For the reasons discussed with regard to venue infra Part II, the undersigned declines to consider whether the alleged events at Hancock State Prison are part of the same transaction as those at Macon State Prison, such that Plaintiff could proceed against the officials from those facilities jointly under Rule 20(a)(2).  Rather, for the purposes here, it is sufficient to find that the alleged incidents at Smith State Prison were unrelated to those occurring elsewhere and that, as a result, the Smith State Prison officials may not be joined with the remaining officials as Defendants in this action.

however, even accepting this fact as true, nothing suggests that the Hancock State Prison officials' decision not to provide a disciplinary hearing at that time—the action underlying Plaintiff's Fourteenth Amendment claims—were connected to the events allegedly transpiring at Smith State Prison. (See Doc. 1, p. 8.)

Nor do Plaintiff's remaining claims for relief satisfy the first prong of Rule 20(a)(2). Plaintiff's Section 1983 claims alleging Eighth Amendment violations, as well as his negligence claims under Georgia law, pertain only to Hancock State Prison officials Sellers, Ivey, Primus, Burnette, and Lift, based on their alleged confiscation and discontinuation of Plaintiff's respiratory treatment. (Id. at pp. 15–16.) Relevant here is that Plaintiff does not seek relief from any Smith State Prison official on these grounds. As a result, Plaintiff fails to state any right to relief permitting him to proceed against the Smith State Prison officials and the remaining officials jointly as Defendants under the first prong of Rule 20(a)(2). Furthermore, joinder under these circumstances would be contrary to the purposes of Rule 20(a)(2), in that entertaining the unrelated claims against the numerous officials would neither expedite their resolution nor promote trial convenience. See Swan, 293 F.3d at 1253.

Despite Plaintiff's improper joinder of these officials as Defendants here, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Rather, a court "may at any time, on just terms, add or drop a party" and "may also sever any claim against a party." Id. Consistent with these principles, and this Court's obligation to construe Plaintiff's pleadings in his favor, the undersigned recommends that Plaintiff's Section 1983 and state-law claims against Smith State Prison officials Williams, Deal, Smokes, and Coleman be **SEVERED** into a separate lawsuit from his claims against the Hancock State Prison and Macon State Prison officials. Because Plaintiff seeks to hold Commissioner Owens liable for the alleged events at each of

10

these facilities (see Doc. 1, p. 2), the undersigned further recommends that Commissioner Owens remain a named Defendant in both actions and that Plaintiff's claims against him be **SEVERED** accordingly.[3]

## II.     Claims Concerning Hancock State Prison and Macon State Prison

Plaintiff seeks relief pursuant to Section 1983 and Georgia law from Hancock State Prison officials Brown, Sellers, Ivey, Primus, Ransom, Lift, and Burnette; Macon State Prison officials McLaughlin, Blakely, and McIntyre; and Commissioner Owens, based on alleged constitutional or state-law violations occurring at various times during his incarceration at those facilities.  (Id. at pp. 8–16.)[4]

This Court is not the proper venue to hear Plaintiff's claims against these Defendants.  28 U.S.C. § 1391(b) sets forth the applicable venue provisions:

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Assuming the facts alleged by Plaintiff to be true, it appears that these Defendants are located at Hancock State Prison in Hancock County, Georgia; Macon State Prison in Macon County, Georgia; and the Georgia Department of Corrections in Fulton County, Georgia.  (See Doc. 1, pp. 2–4.)  Furthermore, Plaintiff's claims against these Defendants stem from events

---

[3]   Joinder of Commissioner Owens as a Defendant in each of these actions is consistent with Rule 20(a)(2).  See Fed. R. Civ. P. 20(a)(2).

[4]  As noted above, this Report and Recommendation does not address whether Plaintiff should be allowed to proceed against all of these Defendants jointly.  That decision should be made by a court of proper venue as to these Defendants.

allegedly taking place only in these locations.  (See id. at pp. 8–14, 15–16.)  Hancock County and Macon County are in the Middle District of Georgia, while Fulton County is in the Northern District of Georgia.  See 28 U.S.C. § 90(a)–(b) (defining the federal judicial districts in Georgia). Thus, it appears that venue lies in those judicial districts pursuant to 28 U.S.C. § 1391(b). Because Plaintiff could have filed his claims against these Defendants in either the Middle District or Northern District of Georgia, and because a substantial part of the underlying events occurred in the Middle District of Georgia, the undersigned recommends that these claims be **TRANSFERRED** to the United States District Court for the Middle District of Georgia for disposition.  See id. § 1406(a) (stating that where venue is improper, a court must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought").

Because Plaintiff's Motions for a Temporary Restraining Order and Motions for Preliminary Injunction relate only to his current conditions of confinement at Macon State Prison, these Motions are **DENIED** as moot.  (Docs. 3–4, 9–10.)  Plaintiff may request such relief by filing the appropriate motions in the United States District Court for the Middle District of Georgia.[5]

### III.    Claims Concerning Smith State Prison

Plaintiff's Section 1983 claims against Williams, Deal, Smokes, Coleman, and Commissioner Owens allege conspiracy as well as due process and equal protection violations occurring while Plaintiff was housed at Smith State Prison in Tattnall County, Georgia.  (Doc. 1,

---

[5]  The Court makes no representation as to the efficacy of such a pursuit.

pp. 4–8, 15–16.)[6]  It also appears that Plaintiff seeks relief from these Defendants on the basis of intentional infliction of emotional distress under Georgia law.  (See id. at pp. 1, 15.)

To state a claim for relief under Section 1983, Plaintiff must satisfy two elements.  First, he must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States."  Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995).  Second, Plaintiff must allege that the act or omission was committed by "a person acting under color of state law."  Id.

At the outset, Plaintiff cannot sustain Section 1983 claims against Williams, Deal, Smokes, Coleman, and Commissioner Owens in their official capacities.  States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty.  Alden v. Maine, 527 U.S. 706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such defendant is immune from suit under Section 1983.  Id. at 71.  Here, the State of Georgia would be the real party in interest in a suit against Williams, Deal, Smokes, Coleman, and Commissioner Owens in their official capacities, and, accordingly, the Eleventh Amendment immunizes these actors from suit.  See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989).  Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against these Defendants in their official capacities, and these claims should be **DISMISSED**.

As to Plaintiff's claims against these Defendants individually, Plaintiff fails to state any claim for relief against Commissioner Owens.  In Section 1983 actions, liability must be based

---

[6]  Tattnall County, Georgia, is in within the Southern District of Georgia; therefore, there is no venue issue with regard to these claims.  See 28 U.S.C. § 90(c)(6).

on something more than a theory of respondeat superior.  Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998).  A supervisor may be liable only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation."  Id. at 802 (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).  Thus, to state a claim for relief against a supervisory defendant, a plaintiff must allege

> (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct.

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (citing West v. Tillman, 496 F.3d 1321, 1328–29 (11th Cir. 2007)).

It appears that Plaintiff seeks to hold Commissioner Owens liable for the alleged actions of the Smith State Prison officials, based solely on his supervisory position as Commissioner of the Georgia Department of Corrections.  (See Doc. 1, p. 2.)  Plaintiff submits that Commissioner Owens "is the Commissioner of the Stat[e] of Georgia [D]epartment of Corrections.  He is legally responsible for the overall operation of the department and each institution under its jurisdiction."  (Id.)  However, nothing in Plaintiff's Complaint indicates that Defendant Owens had any involvement in, or any custom or history resulting in, Plaintiff's placement in administrative segregation at Smith State Prison.  In fact, Plaintiff's due process claims are based on the Smith State Prison officials' alleged actions in contravention of—rather than pursuant to—the prison policies maintained by the Georgia Department of Corrections.  (See id. at pp. 5-6.)  Because Plaintiff fails to plausibly suggest that Commissioner Owens could be held

liable for any potential constitutional violation arising out of the actions of the Smith State Prison officials, Plaintiff's claims to this effect should be **DISMISSED**.[7]

Plaintiff's allegation of conspiracy against Williams and Deal is insufficient to support his Section 1983 claims against them individually. It is true that "[c]onspiring to violate another person's constitutional rights violates section 1983." Rowe, 279 F.3d at 1283. Even so, "[t]o establish a prima facie case of section 1983 conspiracy, a plaintiff must show, among other things, that the defendants reached an understanding to violate [his] rights." Id. (second alteration in original) (internal quotation marks omitted) (quoting Strength, 854 F.2d at 425). Plaintiff alleges that Williams and Deal failed to investigate his administrative appeals and, on this basis alone, concludes that these officials must have conspired to violate his rights. (Doc. 1, pp. 4–8, 16.) Plaintiff fails to demonstrate that these officials overtly reached such an agreement, and, therefore, his conspiracy claims should be **DISMISSED**.

Likewise, Plaintiff cannot sustain his Section 1983 claims against Williams, Deal, and Smokes on the basis of alleged equal protection violations. Equal protection principles under the Fourteenth Amendment require generally that government officials behave in a way such "that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest."

---

[7] It is unclear whether Deal and Smokes had any direct involvement in Plaintiff's assignment to administrative segregation at Smith State Prison or whether Plaintiff names these Defendants based on their respective roles in approving housing assignments and supervising the administrative segregation program at this facility. (See Doc. 1, p. 2.) Construing the Complaint liberally, Plaintiff arguably could intend to allege that these Defendants acted in their respective capacities in placing Plaintiff in administrative segregation on the date in question. However, the undersigned need not inquire into this issue any further, because, as discussed infra, it appears that Plaintiff's claims against these Defendants individually are due to be dismissed in any event.

Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotation marks omitted) (quoting Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932–33 (11th Cir. 1986)).  Plaintiff sets forth no facts indicating that the Smith State Prison officials treated him differently than similarly situated prisoners based on a discriminatory intent.  Plaintiff simply alleges that the officials' failure to provide him a disciplinary hearing deprived him equal protection of the law. (Doc. 1, p. 15.)  Such a conclusory allegation falls short of plausibly suggesting that any constitutional violation occurred.  Plaintiff's equal protection claims should, consequently, be **DISMISSED**.

As for Plaintiff's due process claims against Williams, Deal, Smokes, and Coleman individually, the Due Process Clause of the Fourteenth Amendment "protects against deprivations of 'life, liberty, or property without due process of law.'"  Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. Const. amend. XIV).  The United States Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 1290–91 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Plaintiff's allegations of being denied certain benefits guaranteed pursuant to prison policy arguably state procedural due process violations; however, Plaintiff cannot obtain the relief he is seeking on this basis.  As laid out below, even if Plaintiff were to prove a procedural due process violation at Smith State Prison, he cannot obtain a declaratory judgment,

compensatory damages, punitive damages, or injunctive relief on his procedural due process claims against the Smith State Prison Defendants.

Under the Declaratory Judgment Act, a federal court "[i]n a case of actual controversy within its jurisdiction, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (stating that such a declaration has "the force and effect of a final judgment or decree" and is reviewable as such).  Even so, the Declaratory Judgment Act "does not, of itself, confer jurisdiction upon the federal courts; a suit brought under the Act must state some independent source of jurisdiction[.]"  Mata v. Sec'y of Dep't of Homeland Sec., 426 F. App'x 698, 699 (11th Cir. 2011) (quoting Borden v. Katzman, 881 F.2d 1035, 1037 (11th Cir. 1989)).  A party seeking to invoke a federal court's jurisdiction "must show: '(1) that [he] personally [has] suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision.'"  Am. Ins. Co. v. Evercare Co., 430 F. App'x 795, 798 (11th Cir. 2011) (quoting U.S. Fire Ins. v. Caulkins Indiantown Citrus, 931 F.2d 744, 747 (11th Cir. 1991)). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Id. (quoting GTE Directories Publ'g Corp. v. Trimen Am., 67 F.3d 1563, 1567 (11th Cir. 1995)).  Plaintiff requests a declaration that the actions of these Defendants violated his constitutional and state-law rights. (Doc. 1, p. 16.)  Plaintiff contends that he suffered emotional injury as a result of the alleged violations, but Plaintiff fails to show that his alleged injury is likely to be redressed by a favorable decision in an action for a declaratory judgment.  Because Plaintiff's claims concern

past actions of the Smith State Prison Defendants, and because Plaintiff is no longer housed at that facility, this case does not present the type of immediate dispute over legal interests that a declaratory judgment is intended to resolve.

As to Plaintiff's request for compensatory damages, a denial of procedural due process is actionable under Section 1983 only for nominal, rather than compensatory, damages, absent proof of actual injury.  Carey v. Piphus, 435 U.S. 247, 266 (1978) (reversing the appellate court's holding that the plaintiffs should be granted compensatory damages for a procedural due process violation causing no actual injury).  "Although mental and emotional distress caused by the denial of procedural due process itself is compensable under [Section] 1983, . . . neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused."  Id. at 264.  Plaintiff makes a conclusory allegation that the alleged procedural due process violations caused him "emotional injury," because he could not participate in certain programs and activities while in administrative segregation at Smith State Prison.  (Doc. 1, p. 17.)  However, the Court cannot presume that the alleged deprivations were certain to cause emotional distress, and Plaintiff offers no facts demonstrating any actual distressing effect on him.  Carey, 435 U.S. at 263 (requiring a showing of the distressing effect on the plaintiff, which may be evidenced by his conduct or the observations of others).  Plaintiff complains of "respiratory impairment" only as a physical injury stemming from the discontinuation of his respiratory treatment at Hancock State Prison, not as any sort of physical manifestation of the emotional injury allegedly caused by the Smith State Prison officials.  (Doc. 1, pp. 17–18.)  Because the Complaint contains only a conclusory allegation of emotional injury without any factual support, Plaintiff's ability to prove

actual emotional injury and ultimately recover compensatory damages is merely conceivable rather than plausible.

Punitive damages are available in a Section 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Plaintiff seeks punitive damages from Williams, Deal, and Smokes "for their willful and malicious conduct in confining the Plaintiff to segregation without a hearing before or after his placement" therein.  (Doc. 1, p. 18.)  Plaintiff also requests punitive damages from Coleman but does not provide any justification for doing so.   (See id.)  Plaintiff does not state sufficient factual matter to establish that the Smith State Prison Defendants were motivated by evil motive or intent or that they acted with reckless or callous disregard to his federally protected rights. Given the conclusory or wholly unsubstantiated nature of his requests for relief, Plaintiff fails to plausibly demonstrate that he would be entitled to punitive damages on account of his due process claims.

By contrast, equitable relief is often available to remedy procedural due process violations.  See McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) ("In procedural due process cases, . . . the primary relief sought is equitable.").  Nevertheless, the limitations on equitable relief in the prison context traditionally have included a reluctance to interfere with prison administration and discipline, unless there is a clear abuse of discretion.  See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989); Newman v. State of Ala., 683

19

F.2d 1312, 1320–21 (11th Cir. 1982) ("Deference to prison authorities is especially appropriate when state penal facilities are involved.") (reversing a district court's injunction requiring a release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and a less intrusive equitable remedy was available).  Plaintiff asks that the Court "[e]xpunge the disciplinary convictions described in [his] Complaint from [his] institutional record, as well as any disciplinary reports while [he was] confined in [administrative segregation]."  (Doc. 1, p. 17.)  Because such relief involves the recordkeeping at Smith State Prison—a matter squarely within the realm of prison administration—the Court cannot grant Plaintiff this form of equitable relief.  Moreover, because Plaintiff is no longer at Smith State Prison, any requests for relief from the conditions at Smith State Prison and against the Smith State Prison Defendants are now moot.  For example, even if the Court were to find that Plaintiff's placement in administrative segregation at Smith State Prison violated his rights to procedural due process, the Court could not remedy that violation by ordering that the Smith State Prison Defendants remove him from administrative segregation, because he is no longer housed at that facility.

In sum, even if Plaintiff were to succeed in proving that procedural due process violations occurred at Smith State Prison, this Court ultimately could not grant the declaratory, monetary, and equitable relief he is seeking through this civil rights action.  Accordingly, the undersigned finds no reason to allow Plaintiff to proceed with his Section 1983 claims on procedural due process grounds.  For these reasons, these claims should be **DISMISSED**.

Finally, assuming that Plaintiff intends to do so, Plaintiff cannot pursue his state-law claims of intentional infliction of emotional distress.  Because Plaintiff cannot proceed on his asserted federal claims, and because these Defendants reside in Georgia, this Court has no

jurisdiction to hear Plaintiff's state-law claims standing alone.  <u>See</u> 28 U.S.C. §§ 1331–32 (explaining that federal courts have jurisdiction over cases involving a federal question or diversity).  Furthermore, even if this Court were to find that Plaintiff states some viable federal claim sufficient to invoke jurisdiction, any supplemental claim of intentional infliction of emotional distress would fail.  To state a claim of intentional infliction of emotional distress under Georgia law, a plaintiff must allege facts showing that "(1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; (3) the defendant's conduct caused emotional distress; and (4) the resulting emotional distress was severe." <u>Lightning v. Roadway Express, Inc.</u>, 60 F.3d 1551, 1557 (11th Cir. 1995).  Such conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Yarbrough v. SAS Sys., Inc.</u>, 419 S.E.2d 507, 509 (Ga. Ct. App. 1992).  Any failure to follow prison policy on the part of the Smith State Prison officials—while perhaps unfair—is not sufficiently atrocious or utterly intolerable so as to amount to extreme and outrageous conduct. Accordingly, Plaintiff's state-law claims against these Defendants should be **DISMISSED** for lack of jurisdiction or, alternatively, failure to state a claim upon which relief may be granted.

## IV.   <u>Leave to Appeal in Forma Pauperis</u>

The Court should also deny Plaintiff leave to appeal in forma pauperis.  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken in forma pauperis if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. §

1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cnty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears that the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an in forma pauperis action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, any appeal taken in this case would be based on indisputably meritless legal theories or baseless factual allegations.  Because there are no nonfrivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, in forma pauperis status on appeal should be **DENIED**.

## CONCLUSION

For the reasons stated above, the undersigned recommends that Plaintiff's Section 1983 and state-law claims against Williams, Deal, Smokes, Coleman, and Commissioner Owens arising out of the alleged events at Smith State Prison be **SEVERED** into a separate lawsuit from his claims against the other Defendants relating to Hancock State Prison and Macon State Prison. The undersigned further recommends that Plaintiff's claims against Williams, Deal, Smokes, Coleman, and Commissioner Owens concerning Smith State Prison be **DISMISSED**.  In addition, Plaintiff's suit against Brown, Sellers, Ivey, Primus, Ransom, Lift, Burnette, McLaughlin, Blakely, McIntyre, and Commissioner Owens should be **TRANSFERRED** to the

United States District Court for the Middle District of Georgia.  Consistent with the preceding recommendation, Plaintiff's Motions for a Temporary Restraining Order and Motions for Preliminary Injunction are **DENIED** as moot.  (Docs. 3–4, 9–10.)

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered.  Any objections asserting that the undersigned failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Order and Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 30th day of April, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA